**BAKER v. HARMON et al. (No. 2795.)***

(Court of Civil Appeals of Texas. Texarkana. July 9, 1923. Rehearing Denied Oct. 4, 1923.)

1. **Appeal and error ⬅➡1052(2)—Admission of estimate of earnings harmless, in view of testimony as to facts.**

Permitting plaintiff to testify that deceased's earnings amounted to $1,000 a year is not ground for complaint; she having fully stated the facts on which she based her estimate, so that the jury could not reasonably have been misled by it.

2. **Appeal and error ⬅➡1050(1)—Admission of testimony harmless in view of other evidence.**

It appearing from the testimony, in action for death, that plaintiff was, for years had been, and during her life might continue to be, an invalid, testimony that she had not received the attention of young men in recent years, if inadmissible to prove that she might not marry, and would continue to be dependent, was harmless.

3. **Appeal and error ⬅➡1050(1)—Evidence of speed before crossing was reached held harmless in view of evidence of speed at crossing.**

Testimony as to speed of train three-fourths of a mile before it reached the crossing, even if inadmissible, *held* harmless in view of other testimony as to its speed at the crossing, where accident occurred.

4. **Appeal and error ⬅➡1052(3)—Error in admitting testimony of statement held cured by subsequent denial of statement making the testimony admissible to impeach.**

Even if statement of the engineer, testified to have been made a few miles beyond the crossing where the accident occurred, that the train was running 60 miles an hour at the crossing, was inadmissible as res gestæ, error in admitting it was cured by the engineer subsequently denying that he made the statement; the testimony that he did make it then becoming admissible to impeach the engineer.

5. **Appeal and error ⬅➡206(1)—Where testimony was admissible to impeach, request to limit its consideration was necessary.**

Testimony cannot be complained of on appeal, it having been admissible to impeach a witness, and there having been no request for an instruction to consider it for no other purpose.

6. **Death ⬅➡104(6)—Instruction held not to authorize assessment of double damages.**

Instruction in action for death *held* not to authorize double damages; words therein being not apart from the definition of "pecuniary damages," but included in and a part of the definition.

7. **Death ⬅➡99(4)—$16,000 for death of farmer 62 years old leaving widow and invalid daughter held not excessive.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4704, as to damages for death, verdict of $16,000, apportioned $7,000 to the widow and $9,000 to the daughter, for death of a farmer 62 years old, in good health, and earning $1,000 a year, $300 of which was expended on the wife, and $500 on the invalid daughter, cannot be said to be excessive, nothing in the record indicating the jury were influenced by anything except the testimony.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Mrs. N. J. Harmon and another against James A. Baker, receiver. Judgment for plaintiffs, and defendant appeals. Affirmed.

July 11, 1922, M. H. Harmon, while traveling east in an automobile on a public road near Arp, was struck and killed by a passenger train moving south on the International & Great Northern Railroad Company's line of railway at a point where same crossed said public road. This suit was by appellees, his widow and daughter, for damages for his death. They alleged, and the jury on special issues submitted to them found, that appellant was guilty of negligence which was a proximate cause of the accident (1) in running the train "at an unusual and dangerous rate of speed; and (2) in permitting the railroad company's right of way on the west side of the crossing to be "incumbered [quoting] with a growth of bushes and weeds thereon in such a manner as to obstruct the view of the train approaching said crossing from Arp by the deceased as he approached said crossing on the occasion in question, to such an extent that he could not have discovered the approaching train in time to have avoided the collision if he had looked for it." The jury further found that the deceased was not guilty of contributory negligence as charged against him by appellant, and they further found that appellees were damaged in the sum of $16,000, which they apportioned as follows: To the surviving widow $7,000, and to the surviving daughter $9,000. Judgment having been rendered accordingly, appellant prosecuted this appeal.

N. B. Morris, of Houston, and Bulloch, Ramey & Storey, of Tyler, for appellant.

Butler, Price & Maynor, of Tyler, for appellees.

WILLSON, C. J. (after stating the facts as above). We do not think a sufficient reason why the judgment should be reversed is stated in any of the assignments in appellant's brief.

So far as the findings of negligence on the part of appellant in ways submitted to them are concerned, they were amply supported by the testimony, and we think the jury had a right to say, as they did, that the deceased was not guilty of contributory negligence which was a proximate cause of the accident.

[1-5] The contentions based on the action of the trial court in permitting the widow of

the deceased to testify over appellant's objection that his earnings amounted to $1,000 a year, and in permitting her to testify that the other appellee, her daughter, shown to be 22 years of age, had not "received any company from young men in recent years," are believed to be without merit. The facts upon which the witness based her estimate of the amount of the deceased's earnings were fully stated by her, and the jury, as reasonably sensible men, could not have been misled by her estimate. Moreover, we think, the facts stated by the witness showed that if her estimate as to the amount of the deceased's earnings was not correct, it was so because the amount stated was less than he, in fact, earned. It appeared from the testimony that the daughter at the time of the trial was, for years before had been, and during her life might continue to be, an invalid. The testimony as to her receiving the attentions of young men was, perhaps, relevant for the purpose of proving that she might not marry and would continue to be dependent on the deceased for support while he lived. If it was not admissible for that purpose, we think the error in admitting it should be treated as harmless. And so as to the testimony of the witness Blankenship that the train was running at a speed of not less than 50 miles an hour when he saw it approaching the crossing at a point about three-fourths of a mile from same. We think the testimony was admissible (Railway Co. v. Watkins [Tex. Civ. App.] 245 S. W. 794; 22 C. J. 567); but, if it was not, the error in admitting it would not be a reason for reversing the judgment, in view of other testimony as to the speed of the train at the time the accident occurred. A part of the other testimony referred to was that of the witness Swinney that the engineer operating the locomotive at the time of the accident stated to him when the train reached Troup, 6 or 7 miles from the crossing, that the train was running at the rate of 60 miles an hour when it struck the automobile at the crossing. The testimony of Swinney was objected to on the ground alone that it was hearsay. The time intervening between the time when the collision occurred and the time when Swinney testified the engineer made the statement was not directly shown, but the jury might have concluded from the circumstances that it was only a few minutes. If it were conceded that it did not sufficiently appear that the statement of the engineer was admissible under the res gestæ rule, still the error in admitting it, if any, was cured when the engineer, who afterwards testified as a witness, denied that he made the statement attributed to him by Swinney. We see no reason why the testimony of Swinney, on such denial, did not become admissible for the purpose of impeaching the engineer. If it did we think it was of no importance that it was given before instead of after the engineer testified. Being

admissible for the purpose stated, in the absence, as was the case, of a request by appellant to have the jury instructed to consider it for no other purpose, appellant has no right to complain here. Railway Co. v. George, 85 Tex. 150, 19 S. W. 1036.

[6] With reference to the damages, if any, recoverable by appellees, the court instructed the jury that same were "limited and restricted to such pecuniary losses, if any, as the evidence showed they sustained as the direct result of the death of the deceased," and then told them that—

"by 'pecuniary damage' is meant contributions of money, or other benefits which may be reasonably valued in money, if any, shown by the evidence which the surviving widow and daughter of deceased would have received from him if he had not been killed, and any attention, care and counsel to the surviving widow, and which the evidence may show they have lost by reason of his death. In arriving at such damages you cannot take into consideration or allow anything for grief or bereavement or loss of society or companionship."

Appellant insists the instruction authorized the jury to assess double damages, in that it is asserted, after defining "pecuniary damages" as meaning "contributions of money or other benefits which may be reasonably valued in money," the court added "and any attention, care and counsel to the surviving widow." The contention is without merit. The words mentioned as added after the term "pecuniary damages" was defined were not apart from, but were included in and were a part of, the definition. Railway Co. v. White (Tex. Civ. App.) 120 S. W. 958.

[7] The contention most vigorously urged and which seems to be mainly relied upon as presenting a reason why the judgment should be reversed, is that it was for an excessive amount. It appeared that the deceased was a farmer about 62 years of age, and that the life expectancy of a man of that age, according to mortality tables, was 12½ years; that he had good health, and that he earned about $1,000 a year, $300 of which was expended on his wife, and $500 on his invalid daughter. We have not been referred to and have not found anything in the record indicating that the jury in estimating the damages were influenced by anything except the testimony, and therefore we do not think we should say that their estimate was excessive. The rules applicable in disposing of such a contention were stated by the Supreme Court in Railway Co. v. Lehmberg, 75 Tex. 61, 12 S. W. 838. In that case the judgment was for $10,000 in favor of the widow and children of a man 35 years of age who was earning $1.25 a day, and whose "chief qualifications for earning money were that he was 'stout, healthy and sober.'" In affirming the judgment the court said:

"If it was our duty to calculate from these facts the pecuniary value of his life to his wife

and children at the date of his death, we would not be able to make it reach near the sum given by the verdict. While the law does not, in this character of action, intend to give compensation for anything but pecuniary loss, by estimating the money value of the life of the relation, and while it necessarily results that regard must in each instance be paid to such facts and conditions as cast light upon the subject, it yet must be admitted that the injury is not intended to be narrowed down, by the law, to a result that can be exactly accounted for by the facts in evidence. Every parent and husband has for his wife and children a pecuniary value beyond the amount of his earnings by his labor or vocation. That value may to some, but not to every, extent, be susceptible of allegation and proof, and, to the extent that it can be alleged and proved, it ought to be done. The difficulties of proof are known to the lawmaker. In some states an attempt has been made to remove them, to some extent, by placing limits to the amount that may be recovered. In establishing such rules the idea of making compensation in each instance for the pecuniary value of the lost life is necessarily abandoned. When no amount is fixed by law, and no rule is prescribed for making the calculation, upon facts capable of exact ascertainment, it necessarily follows, we think, that the lawmaker intended that, having reference as far as practicable to conditions existing at the time of the death, juries, from their own knowledge, experience, and sense of justice, should fix and assess the proper sum. They are expected to act uninfluenced by passion, prejudice, or partiality, and to pay due regard to the ascertained facts and conditions surrounding the subject. When it appears to the court that they have disregarded these requirements, their verdict should be set aside. On the other hand, when the court is unable to determine that these things have not been observed by the jury, and when it does not appear that the verdict is not the result of the honest endeavor of the jury to follow their own convictions, in the exercise of a power not precisely defined, we think the law intends that the jury's estimate, rather than the equally undefined one of the judges, shall prevail."

And see article 4704, Vernon's Statutes; Southern Traction Co. v. Hulbert (Tex. Civ. App.) 177 S. W. 551; Railway Co. v. Higginbotham (Tex. Civ. App.) 173 S. W. 482.

The contentions not disposed of by the rulings made are also without merit, and are overruled.

The judgment is affirmed.